UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Darin Gene Berry,                                  Case No. 18-cv-934 (SRN/TNL)

          Petitioner,

v.                                                 **REPORT AND RECOMMENDATION**

Warden R. Marques,

          Respondent.

Darin Gene Berry, 27833-045, FCI-Sandstone, PO Box 1000, Sandstone MN 55072 (*pro se* Petitioner); and

Bahram Samie, Assistant United States Attorney, United States Attorney's Office, 300 South 4th Street, Suite 600, Minneapolis MN 55415 (for Respondent).

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on a Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241, (ECF No. 1), and Respondent's Response to Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241, (ECF No. 9).[1] This action has been referred to the undersigned magistrate judge for report and recommendation to the Honorable Susan Richard Nelson, United States District Judge for the District of Minnesota, under 28 U.S.C. § 636 and Local Rule 72.2(b).

---

[1] Berry also filed his Motion to Stay Execution of Proceedings and Amend Response After Disposition of Grievance Pursuant to Fed. R. Civ. P. 62(B). (ECF No. 12). Through this motion, Berry asserts that a correctional officer at FCI-Sandstone "removed documents from [Respondent's] response." (ECF No. 12, at 1). The document Berry asserts was removed was "Exhibit D" referenced on page 15 of the Respondent's response; Berry refers to the case citation of *Montano v. Marques*, Case No. 17-cv-5470 (JNE/LIB). (ECF No. 12, at 1–2). This motion is now moot because Berry has since filed an amended response after gaining access to that particular case. (*See* ECF No. 14, at 1). Accordingly, Berry's motion to stay is denied as moot.

Based on all the files, records, and proceedings herein, and for the reasons set forth below, this Court recommends that the petition be dismissed on jurisdictional grounds.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Berry's Residential Reentry Center Placement

Petitioner Darin Gene Berry is incarcerated at the Federal Correctional Institution in Sandstone, Minnesota. (Pet., at 1, ECF No. 1; Decl. of Jon Gustin ¶ 22, ECF No. 10). Berry is serving a 53-month term of imprisonment for conspiracy to distribute methamphetamine after he was sentenced in the United States District Court for the Western District of Missouri following a guilty plea. (Pet., at 1; Gustin Decl. ¶ 22, Ex. B; *United States v. Berry*, Case No. 5:15-cr-06004-DGK-19 (W.D. Mo.)). Berry has a projected release date of January 20, 2019 under 18 U.S.C. § 3621(e) for successful completion of the Bureau of Prisons' ("BOP") residential drug abuse program ("RDAP"). (Gustin Decl. ¶ 22, Ex. B).[2]

> By way of contextual background, under the Second Chance Act of 2008, the BOP
>
> shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community.

18 U.S.C. § 3624(c)(1). These provisions are to be "consistent with section 3621(b)," "determined on an individual basis," and "of sufficient duration to provide the greatest likelihood of successful reintegration into the community." 18 U.S.C. § 3624(c)(6). Under

---

[2] The BOP offers RDAP to prisoners who volunteer for treatment and have a diagnosable and verifiable substance abuse disorder. 28 C.F.R. §§ 550.51, 550.53; *see* 18 U.S.C. § 3621(e)(1)(C).

Section 3621(b), the BOP must consider five factors: "(1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner;" (4) any statement by the court that imposed the sentence (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted or (B) recommending a type of penal or correctional facility as appropriate; and (5) any pertinent policy statement issued by the United States Sentencing Commission. 18 U.S.C. § 3621(b).

Berry was reviewed for a pre-release residential reentry center ("RRC") placement and it was recommended, as memorialized via an "Institutional Referral for RRC Placement" form, that Berry be placed into a pre-release RRC on July 31, 2018. (Gustin Decl. ¶ 23, Ex. C). This recommendation noted that Berry was working to obtain his GED, was participating in RDAP, had paid his court-imposed financial assessment, had taken some education courses, and maintained family ties through telephone, email, and letters. (Gustin Decl. ¶ 23, Ex. C).

Berry's institutional-level recommendation was then forwarded to the BOP's Residential Reentry Manager field office ("RRM") in Kansas City. (Gustin Decl. ¶ 10; *see* Gustin Decl. Ex. C (noting the recommendation was directed to the RRM)). The RRM reduced Berry's recommended RRC placement time from July 31, 2018 to September 21, 2018 "because resources were not available in the community for a longer placement." (Gustin Decl. ¶ 24). Respondent has not provided this Court any documentation reflecting RRM's decision concerning Berry's RRC placement other than a single paragraph in Gustin's Declaration, although Gustin serves as the Administrator of the BOP Residential

Reentry Management Branch's central office in Washington, DC. (Gustin Decl. ¶ 1). Gustin asserts the RRC facility where Berry would be placed "has been operating over contract capacity" so Berry's placement "had to be reduced because resources were not available in the community for a longer placement, and a placement date of September 21, 2018, was selected." (Gustin Decl. ¶ 24; ECF No. 2, at 1 ("[M]y placement was later reduced and I was informed by the Unit Team that this was due to 'Resources/Bedspace' in relation to apparent issues with RRC 'Contracts & Quotas'.")).

Berry then filed an administrative complaint with the BOP, asserting that his RRC placement was erroneously reduced and his Section 3621(e) RDAP reduction was erroneously shortened. (Pet., at 2–3; Pet. Ex. 1 ECF No. 1-1). The BOP rejected Berry's complaints. (Pet. Ex. 1).

### B. Petition for Habeas Corpus

Berry filed the instant habeas corpus petition bringing three grounds for relief.[3] First, Berry asserts the BOP's reduction of his RRC placement and Section 3621(e)

---

[3] "A prisoner may bring a habeas action challenging the BOP's execution of his sentence only if he first presents his claim to the BOP." *Mathena v. United States*, 577 F.3d 943, 946 (8th Cir. 2009) (citing *United States v. Chappel*, 208 F.3d 1069 (8th Cir. 2000) (per curiam)). When a petitioner has not exhausted his administrative remedies, his petition may be dismissed without prejudice so that he may be allowed the opportunity to complete the administrative processes afforded by the BOP. *Mathena*, 577 F.3d at 946 (citation omitted). Exhaustion of remedies as a prerequisite to filing § 2241 petitions is a judicially-created barrier, not jurisdictional in nature. *Lueth v. Beach*, 498 F.3d 795, 797 n.3 (8th Cir. 2007). Where an "exhaustion requirement is judicially imposed, it can be waived." *United States v. Dico, Inc.*, 136 F.3d 572, 576 (8th Cir. 1998). Here, Berry admits he has not exhausted administrative remedies, (Pet., at 3), but asserts requiring full exhaustion will conflict with his requested relief date given the time to process such appeals, (ECF No. 3, at 4; ECF No. 2, at 1). Respondent has not argued that the petition should be dismissed for failure to exhaust administrative remedies. Taking into consideration Berry's argument concerning exhaustion of administrative remedies, the timeframe of this case, and Respondent's waiver, this Court concludes that the exhaustion requirement should be waived as a bar to consideration of Berry's habeas petition.

4

reduction for RDAP completion are contrary to law, exceeding statutory authority, or violative of the Constitution as the BOP did not properly consider the factors espoused by Sections 3621(b) and 3624(c). (Pet., at 6–7). Second, Berry asserts the BOP did not make community confinement decisions on an individualized basis. (Pet., at 7). And third, Berry asserts the BOP arbitrarily and capriciously abused its discretion and exceeded statutory authority by not making a community confinement decision that allows for placement of sufficient duration to provide successful reintegration. (Pet., at 7). Berry requests that the Court restore his July 25, 2018 placement date and full RDAP reduction. (Pet., at 8).

Respondent asserts that the Court lacks subject matter jurisdiction to consider Berry's habeas petition. (Resp. to Pet., at 9–12, ECF No. 9). Alternatively, Respondent asserts Berry's petition fails on the merits. (Resp. to Pet., at 12–19). Berry maintains habeas relief is proper. (ECF Nos. 13, 14).

## II. ANALYSIS

The basic purpose of habeas corpus is to allow a prisoner to attack the legality of his detention. *Preiser v. Rodriquez*, 411 U.S. 475, 484 (1973). "A motion under 28 U.S.C. § 2241 challenges the *execution* of a sentence while a motion under 28 U.S.C. § 2255 challenges the *imposition* of a sentence." *Deleston v. Wilson*, Case No. 13-cv-2733 (JNE/SER), 2014 WL 3384680, at *3 (D. Minn. July 10, 2014) (emphasis in original); *Matheny v. Morrison*, 307 F.3d 709, 711 (8th Cir. 2002). "If the prisoner is not challenging the validity of his conviction or the length of his detention, such as loss of good time, then a writ of habeas corpus is not the proper remedy." *Kruger v. Erickson*, 77 F.3d 1071, 1073 (8th Cir. 1996). Here, Berry is contesting the BOP's decision relating to his RRC placement

and his RDAP reduction. The relief sought by Berry is release to a residential re-entry center. Berry is currently incarcerated within the District of Minnesota. Thus, this Court finds jurisdiction is proper under 28 U.S.C. § 2241. *See Spencer v. Haynes*, 774 F.3d 467, 469 (8th Cir. 2014) (where petitioner seeks remedy that would result in an earlier release from prison, habeas corpus is the proper remedy).

The BOP decision that aggrieved Berry—his RRC placement—is not generally subject to judicial review under the Administrative Procedures Act. 18 U.S.C. § 3625; *see Santiago-Lebron v. Florida Parole Comm'n*, 767 F. Supp. 2d 1340, 1351–52 (S.D. Fla. 2011) (prisoner's argument that the BOP arbitrarily and capriciously concluded he was ineligible for RDAP was not subject to judicial review under APA, where prisoner failed to present any cognizable constitutional claim, and BOP's interpretation of the statute was not contrary to well-settled law); *Bernard v. Roal*, 716 F. Supp. 2d 354, 360–61 (S.D.N.Y. 2010) (same for residential re-entry center under RDAP); *Lyle v. Sivley*, 805 F. Supp. 755, 757–60 (D. Ariz. 1992) (BOP's decisions to grant or deny pre-release treatment are committed to agency discretion and not subject to judicial review except for colorable constitutional claims or claims that agency exceeded its statutory authority); s*ee also Anderson v. Fed. Bureau of Prisons*, 506 F. Supp. 2d 28, 29–30 (D.D.C. 2007) (APA does not provide basis for federal prisoner's challenge to federal BOP's termination of prisoner from his work program).

Indeed, courts in this District have held that 18 U.S.C. § 3625 precludes judicial review of the BOP's discretionary decisions under §§ 3621 and 3624 regarding RRC placements, RDAP participation, and RDAP early release. *See, e.g.*, *Simon v. LaRiva*, Case

6

No. 16-cv-146 (ADM/TNL), 2016 WL 1626819, at *4–*6 (D. Minn. Mar. 10, 2016) ("So long as the BOP made an individualized determination in accordance with the appropriate considerations, this Court does not have jurisdiction to evaluate the BOP's exercise of its discretion."), *report and recommendation adopted by* 2016 WL 1610603 (D. Minn. Apr. 21, 2016); *Crawford v. Nicklin*, Case No. 13-cv-2462 (JRT/SER), 2014 WL 538699, at *7–*8 (D. Minn. Feb. 11, 2014) ("Courts in this District have also found § 3625 precludes judicial review of BOP discretionary decisions under § 3621."); *Ambrose v. Jett*, Case No. 13-cv-2343 (PJS/JSM), 2013 WL 6058989, at *7 (D. Minn. Nov. 15, 2013) ("[T]his Court does not have jurisdiction to review the ultimate discretionary decision by the BOP under §§ 3621(b) or 3264(c) to place Ambrose in an RRC or in home confinement placement."). Accordingly, Ground Three of Berry's Petition, a claim which asserts that the BOP arbitrarily and capriciously abused its discretion and exceeded statutory authority in making Berry's RRC placement decision, cannot be entertained by this Court.

Judicial review, remains however, "for any allegations that the BOP's action is contrary to established federal law, violates the Constitution, or exceeds statutory authority." *Ambrose*, 2013 WL 6058989, at *7 (citing *Tapia v. United States*, 546 U.S. 319, 331 (2011)); *see Simon*, 2016 WL 1626819, at *7 ("Although the Court is barred by 18 U.S.C. § 3625 from reviewing a discretionary determination made by the BOP, judicial review remains for claims that the BOP has acted contrary to federal law, violated the United States Constitution, or exceeded its statutory authority."). Berry presents such a claim via Grounds One and Two, which assert that the BOP did not follow the law in making Berry's RRC placement decision.

As noted above, the BOP is required to consider the five Section 3621 factors on an individual basis. 18 U.S.C. § 3624(c)(6); *Fults v. Sanders*, 442 F.3d 1088, 1092 (8th Cir. 2006). "Nothing in § 3621(b) regulates the weight that the BOP must give to each of the factors enumerated by the statute, even if the statute were read to require BOP to give at least *some* consideration to each factor." *Moss v. Apker*, 376 F. Supp. 2d 416, 424 (S.D.N.Y. 2005) (citing *Lopez v. Davis*, 531 U.S. 230, 242 (2001) (emphasis in original)). So long as the BOP conducts a good faith consideration of the Section 3621 factors, its obligations under that statute are satisfied. *See Miller v. Whitehead*, 527 F.3d 752, 758; *Fults*, 442 F.3d at 1089.

Here, the BOP appears to have bifurcated its Section 3621 consideration. At the institutional level, Berry's history and characteristics, offense, and sentence and sentencing policy were considered. At the administrative level, the BOP considered the resources of the particular RRC facility contemplated. In amalgamating these two offices' determinations, the BOP concluded Berry's RRC placement would commence September 21, 2018, rather than July 31, 2018 as recommended by the institution-based BOP officials. The fact that the Section 3621 decision process was bifurcated does not, in and of itself, result in a recommendation made without individualized consideration. Rather, this decision-making process, appears to be BOP's attempt to harness the strengths of its operating components: the institution-based officials who work closely with Berry making the decisions as to Berrry that the RRM would be unfamiliar with, and the RRM making resource-based decisions as to the RRC that the institution-based officials would be

8

unfamiliar with; this is particularly true where Berry is set to be placed in an RRC located in Leavenworth, Kansas, which lies outside the operating area of Sandstone, Minnesota.

Berry places much emphasis on *Ambrose*, 2013 WL 6058989, at *1, in arguing that his RRC determination was improper. In *Ambrose*, it was not the BOP but the RRC itself, a private contractor, that denied the prisoner's placement due solely to the prisoner's convicted offense. 2013 WL 6058989, at *8. The *Ambrose* court found that "the RRC, an independent contractor, had no authority to make this determination, much less based on only one of many factors that must be considered pursuant to § 3621(b). The duty for evaluating and determining placement of inmates rests with the BOP and not some third-party RRC." *Id.* The *Ambrose* court found the BOP could not "hide behind the actions of one private contractor and claim that it has complied with the statutory obligations dictated by §§ 3621(b) and 3624(c)." *Id.* Unlike *Ambrose*, Berry's RRC placement decision was made entirely within the BOP, albeit with the bifurcated decision process discussed above. *See Simon*, 2016 WL 1610603, at *1 ("Considering that the initial recommendation and final review were two component parts of a single decision making process, the record shows that the BOP duly considered the § 3621(b) factors in determining Simon's placement."). Thus, to the extent Berry relies on *Ambrose*, such reliance is misplaced.

Berry's argument also focuses on the fact that his institutional-level recommendation appears to have been trumped by the RRM's determination made in accordance with a recent BOP policy known as the Hurwitz Memo. (Gustin Decl. ¶ 11, Ex. A). Pursuant to the Hurwitz Memo, the BOP discontinued sixteen RRC contracts, seeks to bring "all RRC contracts into compliance with their contracted operating capacity," and

reduce the average length of stay for inmates at RRCs to about 120-125 days "[d]ue to fiscal constraints." (Gustin Decl. Ex. A). Essentially, Berry argues, this 120-day discussion in the Hurwitz memo led to a chilling effect that caused BOP officials to institute an unwritten 120-day limit on the length prisoners could be placed at RRCs regardless of individual considerations and the Second Chance Act's contemplation of RRC placements up to 12 months in length.

While this Court is sympathetic to Berry's argument, the BOP has not exceeded its authority under the law. *See Cucu v. Terris*, 2018 WL 1203495, at *5 (E.D. Mich. Mar. 8, 2018) ("[T]he BOP reduced the amount of time that Petitioner will spend in an RRC due to a lack of bed space and community resources. This was a legitimate basis for delaying Petitioner's transfer to an RRC. Thus, Petitioner's argument about the BOP's alleged reduction or misuse of funds intended for community corrections is not a basis for habeas relief."). As Berry's response aptly points out, the BOP will likely spend more money housing Berry at FCI-Sandstone than it would have had it placed him in RRC placement. Annual Determination of Average Cost of Incarceration, 83 Fed. Reg. 18863 (Apr. 30, 2018) (average cost of incarceration was $94.82 per day in FY2016 and was $99.45 per day in FY2017, while RRC average cost was $76.99 per day in FY2016 and was $88.52 per day in FY2017). While it is hard to square the BOP's proffered rationale of "fiscal constraints" with the fact that it appears willing to spend more public money incarcerating individuals nearing the end of their sentences rather than place those individuals in RRCs for their statutorily-mandated opportunity to "adjust to and prepare for the reentry . . . into the community," 18 U.S.C. § 3624(c)(1), this Court cannot conclude the BOP failed to

10

make an individualized determination in Berry's case. The BOP has satisfactorily shown that it considered the factors in Section 3621(b) when making Berry's RRC placement determination. *See Miller*, 527 F.3d at 758 ("The 'resources of the facility contemplated,' § 3621(b)(1), may depend on the capacity of a particular facility to accept additional inmates into its program at the time of the request."). As noted above, to the extent Berry disagrees with the particular decision reached by the BOP, courts are precluded from examining this exercise of discretion.

Of further note, Berry appears to argue that his sentence reduction pursuant to RDAP was shortened in shifting his RRC placement date from July 2018 to September 2018. Berry's argument is misplaced. While an RRC is not a formal correctional institution, it still constitutes a place of confinement, *see* 18 U.S.C. § 3624(c); *Elwood v. Jeter*, 386 F.3d 842, 847 (8th Cir. 2004), and an inmate has no protected liberty interest in serving their sentence at a particular institution, *Meachum v. Fano*, 427 U.S. 215, 224–25 (1976); *Moorman v. Thalacker*, 83 F.3d 970, 973 (8th Cir. 1996). Indeed, despite the variations to Berry's recommended RRC placement, his projected release date has remained largely the same; indeed, his release date moved up from January 24 to January 20, 2019. (Gustin Decl. ¶¶ 24–25, Exs. B, C). Thus, Berry's claim that he has been denied time reduction for completion of RDAP is without merit and should be dismissed. *See Standifer v. Ledezma*, 653 F.3d 1276, 1280 (10th Cir. 2011) ("A prisoner has no constitutional right to participate in RDAP, *see Reeb v. Thomas*, 636 F.3d 1224, 1228 n.4 (9th Cir. 2011), and similarly, a prisoner has no liberty interest in discretionary early release for completion of RDAP, *Fristoe v. Thompson*, 144 F.3d 627, 630 (10th Cir. 1998).").

Finally, this Court finds that no evidentiary hearing is necessary because the dispute can be resolved on the basis of the record and legal arguments submitted by the parties. *Wallace v. Lockhart*, 701 F.2d 719, 729–30 (8th Cir. 1983).

### III. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. The Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241, (ECF No. 1), be **DISMISSED**; and

2. Petitioner's Motion to Stay Execution of Proceedings and Amend Response After Disposition of Grievance Pursuant to Fed. R. Civ. P. 62(B), (ECF No. 12), be **DENIED AS MOOT** as described herein, note 1, *supra*.

[Signature on next page.]

Date:  July 18, 2018                              *s/ Tony N. Leung*
                                                Tony N. Leung
                                                United States Magistrate Judge
                                                District of Minnesota

                                                *Berry v. Marques*
                                                Case No. 18-cv-934 (SRN/TNL)


## **NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).